UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| PAN AM FLIGHT 73 LIAISON GROUP, |
| Movant, |
| v. |
| GIATRI DAVÉ & GARGI DAVÉ, |
| Respondents. |

No. 10-mc-0077 (JDB)

## MEMORANDUM OPINION

This action arises out of a dispute over the enforceability of a contract -- termed the Joint Prosecution Agreement ("JPA" or "the Agreement") -- by which victims of the 1986 hijacking of Pan Am Flight 73 agreed to pursue joint legal remedies. Giatri Davé and Gargi Davé, victims of the hijacking and the respondents here, brought suit in California state court challenging the scope and meaning of the JPA. The Pan Am Flight 73 Liaison Group ("the LG"), a defendant in the Davés' California action and the movant here, thereafter initiated this action to compel the Davés to arbitrate their claims. The Court granted the LG's motion to compel arbitration, reasoning that the Agreement's arbitration clause was enforceable and encompassed the Davés' claims. See Pan Am Flight 73 Liaison Group v. Davé, --- F. Supp. 2d ---, 2010 WL 1889167, at *4, 13 (D.D.C. May 12, 2010).[1]

The Davés now seek a stay of that order pending appeal.[2] For the reasons discussed

---

[1] The Court also denied the Davés' motion to transfer or stay the case, as well as the LG's motion for a preliminary injunction seeking to hold disputed assets in escrow. See Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *4, 15.

[2] The Davés and the LG have stipulated that this Court's decision compelling arbitration applies to eight additional individuals who had "sought to join the Davés in the California

below, the Court will deny the motion.

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." Nken v. Holder, 129 S. Ct. 1749, 1758 (2009) (citations and internal quotation marks omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 1761. In reviewing a motion for a stay pending appeal, the Court considers four factors: (1) whether the applicant will be irreparably injured absent a stay; (2) whether the applicant has made a strong showing that he is likely to succeed on the merits; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. See id.; accord United States v. Phillip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003). Although "[t]hese factors interrelate on a sliding scale and must be balanced against each other," Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998), "[t]he first two factors of the traditional standard are the most critical," Nken, 129 S. Ct. at 1761.

## ANALYSIS

### I. Irreparable Harm

According to the Davés, the irreparable harm here is the irrecoverable loss of resources available under the JPA as a result of the LG's decision to use those resources to pay for arbitration. See Davés' Mot. to Stay ("Davés' Mot.") [Docket Entry 41], at 13 ("[T]he aggregate

---

Litigation as additional plaintiffs." See Decl. of Kathryn Lee Boyd [Docket Entry 42], Ex. B (Joint Stipulation), 1-2.

Treaty Compensation will be substantially dissipated as the LG is using these funds to pay for arbitration . . . ."); id. at 14 ("Treaty Compensation funds used to finance arbitration in order to have the rights and obligations determined of all parties are not recoverable by any party . . . .").[3] But "the monetary cost of arbitration . . . does not impose . . . legally recognized irreparable harm," Emery Air Freight Corp. v. Local Union 295, 786 F.2d 93, 100 (2d Cir. 1986), because "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury," Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974); accord McSurely v. McClellan, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982).

    Nevertheless, the Davés suggest that the situation here is unique. They assert that because the LG is using JPA funds to pay for arbitration, their award share under the Agreement will be irrevocably reduced. And, in their view, this award reduction is separate from litigation costs, because they are already bearing their own arbitration costs by challenging the JPA.[4] See Davés' Reply in Supp. of Mot. to Stay ("Davés' Reply") [Docket Entry 44], at 10. But even if the Davés will bear some of the LG's arbitration costs, those costs are still just litigation costs, and therefore cannot constitute irreparable harm. See Renegotiation Bd., 415 U.S. at 24.

    Moreover, even if the Court were to frame the potential decrease of the Davés' JPA award as an economic injury distinct from litigation costs, their argument would remain unavailing.

---

[3] Although the Davés frame their irreparable harm argument in terms of the potential harm to "all the interested parties in the disputed funds," Davés' Mot. at 15; see also id. at 13, 14, the irreparable harm analysis looks only to the harm facing the moving party -- here, the Davés, see Nken, 129 S. Ct. at 1761.

[4] It is odd, to say the least, for the Davés to offer this iteration of irreparable harm: although they object to the potential diminution of their JPA award because the LG is using JPA resources to pay for arbitration, the LG is in arbitration only because the Davés have challenged the Agreement.

"[T]o successfully shoehorn potential economic loss into the irreparable harm requirement, a plaintiff must establish that the economic harm is so severe as to cause extreme hardship . . . or threaten [the plaintiff's] very existence." Sandoz, Inc. v. Food & Drug Admin, 439 F. Supp. 2d 26, 32 (D.D.C. 2006) (internal quotation marks omitted); accord Gulf Oil Corp. v. Dep't of Energy, 514 F. Supp. 1019, 1026 (D.D.C. 1981) (potential harm "must be more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff"). Here, however, the Davés' have offered no evidence that obtaining a smaller award under the JPA would cause them extreme hardship; indeed, they fail to indicate that it would cause them any hardship at all. Although they assert without citation or explanation that a loss will be substantial, see Davés' Mot. at 13, such general, unsubstantiated statements are insufficient to demonstrate irreparable harm, see Nat'l Ass'n of Psychiatric Health Sys. v. Shalala, 120 F. Supp. 2d 33, 44 (D.D.C. 2000) (plaintiffs must offer "concrete, reliable evidence to support their contentions of irreparable harm"). Accordingly, the Davés have failed to carry their burden on this essential factor.

## II.     Likelihood of Success on the Merits

In opposing the LG's motion to compel arbitration, the Davés offered several arguments to demonstrate that the JPA's arbitration provision is unenforceable. The Court found each of these arguments unpersuasive, and therefore determined that "the Davés must arbitrate the claims brought in their California action." Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *13. They now suggest that they are likely to prevail on appeal with respect to two of the Court's conclusions. Specifically, the Davés press their argument that "they cannot be bound by the arbitration provision because it conflicts with the terms of federal legislation," id. at *11 (internal quotation marks omitted), by challenging the Court's determination that the Libyan Claims

Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008), and Executive Order 13,477 do not foreclose arbitration.

In support of their argument that the Libyan Claims Resolution Act precludes arbitration and requires a court to adjudicate the JPA's scope, the Davés largely redeploy arguments that the Court fully considered and rejected in resolving the LG's motion to compel arbitration. For example, they again contend that the plain language of the Libyan Claims Resolution Act precludes a court or arbitration panel from "redistributing" funds awarded as part of the claims settlement process between the United States and Libya once the funds are in the hands of U.S. nationals. See Davés' Mot. at 9. But as the Court previously concluded, even if the Court were to adopt the Davés' reading of the Act, that interpretation does not foreclose an arbitrator from determining the Davés' rights and liabilities under the JPA in the first instance.[5] See Pan Am

---

[5] The Court also concluded that the Davés' interpretation of the Act would produce an absurd result: if the Act's immunity provision applied to claims settlement funds once those funds were distributed to a recipient, then those funds could remain immune from judicial process in perpetuity. See Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *11. The recipient could shelter from his creditor in a bankruptcy proceeding a cache of money by alleging that the targeted money was "claims settlement funds." There is no evidence in either the text of the Libyan Claims Resolution Act or its legislative history that suggests Congress intended to create an untouchable corpus of money for U.S. national victims of Libyan terrorism. Such an outcome would "def[y] rationality," and would be "so contrary to perceived social values that Congress could not have intended it." United States v. Cook, 594 F.3d 883, 891 (D.C. Cir. 2010); accord Corley v. United States, 129 S. Ct. 1558, 1566-68 (2009).

To be sure, the Davés assert that they "did not contend that the Treaty Compensation award was immune from judicial process for claims unrelated to claims for Libyan terrorism." Davés' Mot. at 7. In other words, they now suggest that the LCRA's immunity provisions applies only where a party seeks a recipient's claims settlement funds in a case relating to Libyan terrorism. But the text of the LCRA does not limit application of the immunity provision to cases arising out of Libyan terrorism. "It is therefore clear that [the Davés] are asking [the Court] not to interpret [the LCRA], but to revise it." Holder v. Humanitarian Law Project, --- S. Ct. ---, 2010 WL 2471055, at *12 (June 21, 2010). The Davés also suggest that the immunity provision applies only where foreign nationals seek attachment of claims settlement funds. See Davés' Mot. at 7. But again, there is nothing in the text of the LCRA that limits the immunity

Flight 73 Liaison Group, 2010 WL 1889167 at *11 n.10. The Davés' interpretation says nothing about the power of an arbitrator to adjudicate the scope of a contract that purports to encompass funds awarded as part of the claims settlement process. Although their interpretation of the Act may be relevant to how the arbitrator interprets the JPA, it does not preclude the arbitrator from initially considering the meaning of the Agreement. The Davés implicitly recognize this fact: by filing their declaratory judgment in California state court, the Davés themselves sought a judicial determination whether the JPA encompassed claims settlement funds. See also Davés' Reply at 4 n.2 ("At the heart of this contract dispute is the interpretation of the JPA's terms -- whether they extend to cover not only recovery by civil litigation, but also to the recovery for U.S. victims by United States' sovereign negotiation by executive agreement."). Therefore, even were the Court of Appeals to adopt the Davés' interpretation of the Libyan Claims Resolution Act, that decision would have no effect on this Court's conclusion that the Davés' claims must be arbitrated.

In support of their argument that Executive Order 13,477 bars arbitration of their challenge to the JPA, the Davés again offer an argument that the Court considered and rejected: the plain language of the executive order precludes the LG from pursuing arbitration against the Davés. See Davés' Mot. at 11. According to them, Executive Order 13,477 prevents a party from bringing a claim within the terms of Article I of the Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya ("Claims Settlement Agreement"). See id. And, in their view, the Claims Settlement Agreement precludes a suit by a foreign national against an American arising from the Pan Am Flight 73 terrorist attack. See id. Therefore, they believe that because the LG has foreign members, it cannot bring

---

provision's effect to claims brought by foreign nationals.

its motion to compel arbitration against the Davés. See id. But the Court has already found this reading at odds with the plain language of Executive Order 13,477 and the Claims Settlement Agreement:

> By its plain terms . . . Executive Order 13,477 only prohibits claims by foreign nationals against U.S. citizens arising out of Libyan terrorist attacks where the suit "implicates the responsibility" of either Libya or the United States. But the claims asserted in the Davés' California complaint do not implicate the responsibility of either the United States or Libya -- they seek only to determine the scope and enforceability of the JPA, and whether Crowell & Moring and the LG abided by their contractual commitments.

Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *12. Therefore, Executive Order 13,477 does not preclude arbitration of the Davés' claims.

Nevertheless, the Court recognizes that to demonstrate a likelihood of success on the merits, the Davés need not establish "an absolute certainty of success." Population Inst. v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986). Rather, "'[i]t will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, [and] difficult as to make them a fair ground of litigation.'" Id. (quoting Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)). Here, because this Court appears to be the first court to interpret and Libyan Claims Resolution Act and Executive Order 13,477, the proper interpretation of these documents are a "fair ground for litigation." Id.; see also In re Any and All Funds or Other Assets in Brown Brothers Harriman & Co. Account # 8870792 in the Name of Tiger Eye Invs. Ltd., Civ. A. No. 08-mc-0807, at *1 (D.D.C. Mar. 10, 2009) (fair ground for litigation where court was first court to interpret a statute).

### III.    Harm to Other Parties

The Davés next assert that absent a stay "all parties to the JPA with valid claims under it

will be irreparably harmed, as any and all recovery from the Treaty Compensation will be dissipated by costly arbitration." Davés' Mot. at 15. Although this may be so, the Court has previously observed that it is entirely "appropriate for the LG to use the resources obtained under the terms of the JPA to defend the Agreement's validity, for all other parties to the Agreement have an interest in seeing it upheld." Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *8 n.8. And, ostensibly, the non-challenging parties would have to pay litigation costs out of their own pocket if they did not use common funds. Therefore, at best for the Davés, and as they concede, the harm to third parties "factor is neutral in the balancing of the four factors." Davés' Mot. at 15.

### IV. Public Interest

The Davés offer that "[t]he public interest weighs in favor of granting a stay pending appeal to accord proper deference to the political branches' right to intervene at the appellate level on issues related to foreign policy." Davés Mot. at 15. Specifically, the Davés suggest that they "are in active talks with the State Department which is considering an intervention in this case to represent the United States' interests." Davés' Mot. at 16. But as this Court previously observed, "given the fact that this action is, at bottom, a private contractual suit," this is not "the type of case in which the United States generally would file a statement of interest." Pan Am Flight 73 Liaison Group, 2010 WL 1889167 at *13 n.11 (citing McDonald v. The Socialist People's Libyan Arab Jamahiriya, 666 F. Supp. 2d 50, 51-52 (D.D.C. 2009) (statement of interest filed where parties brought suit against Libya in violation of Claims Settlement Agreement)). And the United States has offered no indication that it intends to intervene or file a statement of interest in this action, even though the Davés have been asserting for several months that

intervention was in the works.

In fact, the public interest favors the uninterrupted continuation of arbitration proceedings. In weighing the public interest, the views of "Congress, the elected representatives of the entire nation," are a "sense by which public interest should be gauged." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam). A court "cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" United States v. Oakland Cannabis Buyers' Coop, 532 U.S. 483, 497-98 (2001) (quoting Virginian Ry. Co. v. System Fed'n No. 40, 300 U.S. 515, 551 (1937)). And the Federal Arbitration Act "establishes a federal policy favoring arbitration, requiring that [a court] rigorously enforce agreements to arbitrate." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (internal citations and quotation marks omitted); accord Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985). Hence, this factor weighs against granting the Davés' motion for a stay pending appeal.

## CONCLUSION

A stay pending appeal is "an extraordinary remedy," Cuomo, 772 F.2d at 978, and the Davés have not shown that this case warrants such exceptional relief. Although they have raised issues that are fair grounds for litigation -- the interpretation of the Libyan Claims Resolution Act and Executive Order 13,477 -- the absence of irreparable harm and the fact that the public interest favors arbitration are fatal to their motion. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."); see also Holiday Tours, Inc., 559 F.2d at 844 (standard similar for preliminary injunctive relief and for stay pending appeal). Accordingly, the Court will

deny the motion. A separate Order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 9, 2010